# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **REEDHYCALOG UK, LTD. and GRANT PRIDECO, INC.,** § § § **Plaintiffs** § § **vs.** § § **BAKER HUGHES OILFIELD OPERATIONS INC., HALLIBURTON ENERGY SERVICES INC., and US SYNTHETIC CORPORATION,** § § § § § § **Defendants** § | **CASE NO.  6:06 CV 222** **PATENT CASE** |

## MEMORANDUM OPINION AND ORDER

Before the Court is US Synthetic Corp. and Halliburton Energy Services, Inc.'s (collectively "US Synthetic") Motion to Compel 30(b)(6) Deposition Testimony and Production of Documents (Docket No. 75).  After considering the parties' briefs and oral arguments, the Court **GRANTS in part** and **DENIES in part** the motion.

## BACKGROUND

Plaintiffs ReedHycalog UK, Ltd and Grant Prideco, Inc. (collectively "ReedHycalog") accuse US Synthetic of infringing its U.S. Patent Nos. 6,861,098 ("the '098 Patent"); 6,861,137 ("the '137 patent"); 6,878,447 ("the '447 patent"); and 6,601,662 ("the '662 patent").  All four asserted patents are directed at diamond cutting elements used in drill bits.  The patents purport to teach a diamond cutting element with a thin—i.e. less than one millimeter—outer layer of diamond that is leached to remove substantially all catalyzing material.  Three of the patents require the diamond element to have a "thermal characteristic such that a 950 degrees [Celsius] temperature at the working surface results in a temperature of less than 750 degrees [Celsius] at the depth."  Pat. No. '098 col.14:36-38;

Pat. No. '137 col.16:65-68; Pat. No. '447 col.14:30-33. The '662 patent purports to teach a cutting element with certain impact strength limitations. Pat. No. '662 col.18:30-31.

*Motion for 30(b)(6) witness regarding test methods*

US Synthetic has moved the Court to order ReedHycalog to produce a 30(b)(6) witness capable of describing the proper test methodology to determine whether the thermal characteristic and impact strength limitations are present in the accused products. The patents are silent on how these characteristics are measured.

US Synthetic asserts that the method for measuring the thermal gradient is critical in determining whether a product infringes because the limitation requires a 200 degree gradient across a foil-thin layer of highly-conductive leached diamond. Defendants' Brief at 2 (Docket No. 75). US Synthetic argues that ReedHycalog's Patent Infringement Contentions ("PICs") are not sufficient to set forth ReedHycalog's theory of infringement because the PICs "merely parrot[] back the claim language" and did not include any information on how ReedHycalog determined that the accused products infringed. *Id.* at 5. ReedHycalog's previously-deposed 30(b)(6) witness did not know how to test the thermal gradient and did not know whether ReedHycalog had tested US Synthetic's accused products prior to filing suit. US Synthetic asserts the same arguments regarding the impact strength limitation. At the hearing, US Synthetic argued that it knew of no way to test its products to determine if the thermal gradient or impact strength limitations are met.

ReedHycalog argues US Synthetic's motion is an improper attempt to force ReedHycalog to prematurely reveal its claim construction positions. ReedHycalog further argues that US Synthetic is aware of how to test its products. To support its argument, ReedHycalog points to a document prepared by US Synthetic for its customers that contains mathematical modeling of US Synthetic cutting element performance and a discussion of whether the cutting elements potentially infringe

2

ReedHycalog's claimed temperature gradients.

The asserted patents do not contain limitations regarding how the thermal gradient or impact strength characteristics must be measured. Therefore, ReedHycalog is not required to reveal its position on how these limitations should be measured in its PICs.

However, the thermal gradient and impact strength limitations-at-issue in this case appear difficult, if not impossible, to measure directly. US Synthetic's mathematical modeling is replete with assumptions and it appears to be a less-than-ideal substitute for actual testing of the accused products. US Synthetic argues that it simply does not know how to directly measure the thermal gradient and impact strength limitations and argues that these limitations are indefinite because they cannot be measured. In light of the difficulty in measuring these characteristics, the Court **ORDERS** that US Synthetic may take discovery on ReedHycalog's knowledge of the universe of testing methods available to measure temperature gradient or impact strength. ReedHycalog is not required to indicate which testing method it prefers or describe any work-product theory of infringement. However, if ReedHycalog is aware of no methods—either actual or by modeling—for testing whether the temperature gradient or impact strength limitations are met, the Court cautions that ReedHycalog may run afoul Federal Rule of Civil Procedure 11(b)(2) for not having a reasonable basis for its infringement claims.

*Motion to compel test documents*

US Synthetic has also moved the Court to compel ReedHycalog to produce records for testing of US Synthetic cutting elements conducted by ReedHycalog prior to March 2005. ReedHycalog argues that the tests are non-discoverable as work product.[1]

---

[1] Ordinarily, the work-product doctrine should only be applied after it is decided that the attorney-client privilege does not apply. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981) ("To the extent that the material subject to the summons is not protected by the attorney-client privilege as disclosing communications

3

The work-product doctrine is narrower than the attorney-client privilege in that it only protects materials prepared "in anticipation of litigation." FED. R. CIV. P. 26(b)(3). The work-product doctrine shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947); *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432 (E.D. Tex. 2003). It protects two categories of materials: ordinary work-product and opinion work product. *See generally Upjohn Co.*, 449 U.S. at 400-02. The party asserting the privilege has the burden of showing that the work product doctrine applies. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

The doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client. If a document would have been created regardless[2] of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation. *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984); *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000). Further, the work product doctrine does not extend to the underlying facts relevant to the litigation. *See generally Upjohn*, 449 U.S. at 395-96.

---

between an employee and counsel, we must reach the ruling by the Court of Appeals that the work-product doctrine does not apply. . . ."). This is because the work-product doctrine expressly applies only to "documents and tangible things otherwise discoverable." FED. R. CIV. P. 26(b)(3). If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply. However, ReedHycalog does not claim attorney-client privilege for the testing documents at issue.

[2] Wright and Miller provides:

Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

WRIGHT & MILLER, FED. PRACT. & PROC. § 2024 (1994) (footnotes omitted).

The Fifth Circuit has described the standard for determining whether a document has been prepared in anticipation of litigation:

> [i]t is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the *primary motivating purpose* behind the creation of the document was to aid in possible future litigation.

*United States v. Davis*, 636 F.2d 1028, 1039 (1981) (citations omitted) (emphasis added); *accord In re Kaiser Alum. & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). If a party or its attorney prepares a document in the ordinary course of business, "it will not be protected [from discovery] even if the party is aware that the document may also be useful in the event of litigation." *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 435 (W.D. N.Y. 1997) (quotation and citations omitted).

ReedHycalog argues that the pre-March 2005 testing was done in anticipation of litigation. Steen testified that the testing was performed under the guidance of the legal department. It is not dispositive that the documents were prepared by ReedHycalog engineers and not by attorneys. Rule 26(b)(3) protects documents prepared by or for a party, as long as they are prepared in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

No lawsuit was pending when ReedHycalog began testing US Synthetic cutting elements, and Steen testified that "US Synthetic sued us in March of 2005, in Utah, and we had not contemplated any litigation at that point, in fact, we were in commercial discussions with US Synthetic at that time with reference to the issues that we're here for today." Defendants' Br. Exh. C at 20-21 (Steen Deposition as 30(b)(6) witness) (Docket No. 75). Steen reiterated this point when he testified that "the fact we were testing cutters and looking in our R&D facilities at what others were doing with reference to our IP in 2003, 2004, and 2005, does not reflect that we were in

contemplation of litigation." *Id*. at 21-22.

ReedHycalog argues that Steen's testimony establishes that the testing was work product. Steen testified that "we were trying to do any and all analysis and testing we could to see . . . if there was anybody was violating our IP." *Id*. at 24. Steen also gave conflicting testimony regarding whether ReedHycalog was in anticipation of litigation: "in the context of what we did contemplate, part of the job that our IP department and our legal team does every day is wakes [sic] up thinking about who we're going to sue if somebody has violated and infringed our patents." Plaintiff's Br. at 10-11 (Steen 30(b)(6) Depo. at 144-45) (Docket No. 84).

Given ReedHycalog's conflicting characterizations of the testing, ReedHycalog has failed to show that the *primary purpose* of the testing was to prepare for litigation. Steen testified explicitly that ReedHycalog was *not* in contemplation of litigation prior to March 2005. This testimony is especially relevant in light of the fact that Steen is ReedHycalog's corporate attorney and therefore understands the work-product doctrine and is in a very good position to know whether ReedHycalog contemplated litigation. Therefore his testimony as ReedHycalog's corporate representative on this topic is probative. Steen's later, contradictory testimony does not clearly overcome his earlier disclaimer.

ReedHycalog also attempts to claim the reports as attorney opinion work product. This argument is meritless. The testing-at-issue was conducted by engineers and their reports contain technical analyses. ReedHycalog's conclusory statement that the reports are attorney opinion work product—apparently merely by virtue of being read by Steen—is not sufficient to establish that the reports contain attorney mental impressions, conclusions, opinions, or legal theories. *See Hodges, Grant & Kaufmann*, 768 F.2d at 721. ReedHycalog's testing conducted prior to March 2005 is therefore discoverable, and it is unnecessary to examine whether the movants have demonstrated

6

substantial need for the materials and undue hardship in obtaining their substantial equivalent by other means.

## CONCLUSION

For the foregoing reasons, US Synthetic's motion to compel is **GRANTED in part**. US Synthetic may take discovery on ReedHycalog's knowledge of the universe of testing methods for determining whether the thermal gradient or impact strength limitations are met, and ReedHycalog is **ORDERED** to produce its documents related to testing of US Synthetic cutting elements conducted prior to March 2005. In all other respects, the motion is **DENIED**.

**So ORDERED and SIGNED this 24th day of April, 2007.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**