**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| REEDHYCALOG UK, LTD. and<br>GRANT PRIDECO, INC. | § § § | |
| Plaintiffs | § § | |
| vs. | § § | CASE NO. 6:06 CV 222<br>PATENT CASE |
| | § | |
| BAKER HUGHES OILFIELD<br>OPERATIONS INC., HALLIBURTON<br>ENERGY SERVICES INC., and U.S.<br>SYNTHETIC CORPORATION | § § § § § | |
| Defendants | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are ReedHycalog UK, Ltd. and Grant Prideco, Inc.'s (collectively, "ReedHycalog") Motion to Compel (Docket No. 289), Baker Hughes Oilfield Operations Inc., Haliburton Energy Services Inc., and U.S. Synthetic Corporation's (collectively, "Defendants") Motion to Compel (Docket No. 290), Haliburton Energy Services Inc. ("Haliburton") and U.S. Synthetic Corporation's ("USS") Motion for Leave to File Supplemental Answer (Docket No. 301), Baker Hughes Oilfield Operations Inc.'s ("Baker Hughes") Motion for Leave to File Supplemental Answer (Docket No. 304), and ReedHycalog's Motion to Require USS to Withdraw Confidentiality Designation (Docket No. 308).

Having considered the parties' written submissions, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** ReedHycalog's Motion to Compel (Docket No. 289), **DENIES** Defendants' Motion to Compel (Docket No. 290), **GRANTS** Haliburton and USS's Motion for Leave to File Supplemental Answer (Docket No. 301), **GRANTS** Baker Hughes's Motion for Leave to File

1

Supplemental Answer (Docket No. 304), and **DENIES** ReedHycalog's Motion to Require USS to Withdraw Confidentiality Designation (Docket No. 308).

The Court **ORDERS** Baker Hughes to produce in unredacted form the following portions[1]: in the email from Joseph Walkowski that begins on Priv001630, the second and third paragraphs where the third paragraph ends on the second line on Priv001361; the third full paragraph on Priv001631 where the first sentence of the paragraph begins "There is no guaranteed"; and the same two portions on the email from Walkowski on page Priv001635. The Court further **ORDERS** Baker Hughes to produce the E6 document.[2]

## REEDHYCALOG'S MOTION TO COMPEL

**Background**

ReedHycalog sued Defendants on May 12, 2006 and alleged Baker Hughes willfully infringed U.S. Pat. No. 6,861,098 (the "'098 Patent"), U.S. Pat. No. 6,861,137 (the "'137 Patent"), U.S. Pat. No. 6,878,447 (the "'447 Patent"), and U.S. Pat. No. 6,601,662 (the "'662 Patent") (collectively, the "Patents-in-Suit"). In response to ReedHycalog's willful infringement allegations, Baker Hughes expressed an intent to rely on an opinion of counsel. The opinion of counsel, written by Joseph Walkowski, states the Patents-in-Suit are invalid or unenforceable and that Baker Hughes does not infringe on the Patents-in-Suit. The opinion of counsel relies, in part, on Japanese Patent Application #S59-219500 (the "Sumitomo Application") for its conclusion that the Patents-in-Suit are invalid.

ReedHycalog seeks to compel documents it believes Baker Hughes is wrongfully withholding under claims of attorney-client and attorney work-product privileges. Baker Hughes

---

[1] The Order references the emails Baker Hughes provided for *in camera* review as Exhibit 3 to its Response to ReedHycalog's Motion to Compel.

[2] The Order references the document Baker Hughes provided for *in camera* review as Exhibit 8 to its Response to ReedHycalog's Motion to Compel.

subsequently submitted these documents for *in camera* review.

**Applicable Law**

Courts, for good cause, may order discovery on any matter relevant to the subject matter in the lawsuit. FED. R. OF CIV. P. 26(b)(1). Relevant matters include information inadmissable at trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The Court adheres to a policy of liberal discovery, but where a claim of privilege renders an item undiscoverable, the Court will allow a party to withhold that item. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004) (Davis, J.).

To prevail on a charge of willful infringement, the patentee must show the accused infringer acted with objective recklessness. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). First, the patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions infringed a valid patent. *Id.* The accused infringer's state of mind is irrelevant to this objective inquiry. *Id.* If the patentee meets this threshold objective standard, the patentee must further demonstrate that the accused infringer knew or should have known of this objectively high risk. *Id.*

Disclosure of an opinion of counsel potentially waives attorney-client and attorney work-product privileges. *Id.* at 1372–76. The existence of privileges with regard to the documents in issue is not unique to patent law, and thus, regional circuit law applies to determine the privileges' existence. *See In re Regents of the University of California*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit.").

This action presents a federal question under 28 U.S.C. § 1338(a). Thus, federal common law applies. FED. R. EVID. 501. Attorney-client privilege applies only if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made

(a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Myers v. City of Highland Village*, 212 F.R.D. 324, 326 (E.D. Tex. 2003) (Davis, J.) (citing *U.S. v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978)).

Attorney work-product protects of "documents and tangible things . . . prepared in anticipation of litigation or for trial" by a party or the party's representative, which includes the other party's attorney, consultant, surety, indemnitor, insurer, or agent. Fed. R. Civ. P. 26(b)(3). Courts will order discovery of such documents and tangible things if the party that seeks discovery demonstrates a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials in by other means." *Id.* However, when a court orders discovery of such materials, it must protect from disclosure an attorney's mental impressions, conclusions, opinions, or legal theories that concern the litigation. *Id.* The privilege claimant has the burden to prove attorney work-product or attorney-client privilege applies. *Myers*, 212 F.R.D. 326 (citing *Kelly*, 569 F.2d at 938).

Federal Circuit law governs the extent to which a party waives attorney-client privilege when it asserts an advice-of-counsel defense to rebut a willful infringement allegation. *Seagate*, 497 F.3d at 1367–68. When a party discloses an opinion of counsel to rebut a charge of wilful infringement, that party waives attorney-client privilege to all communications that relate to the same subject matter. *Id.* at 1372 (quoting *Fort James*, 412 F.3d at 1349).

The waived subject matter covers discovery related to whether the accused infringer's reliance the opinion of counsel was objectively reckless. *See Autobytel, Inc. v. Dealix Corp.*, 455

4

F. Supp. 2d 569, 575 (E.D. Tex. 2006) (holding patentee was entitled to discovery related to whether defendant's reliance on its opinion of counsel was reasonable); *Seagate*, 497 F.3d at 1370–71 (holding accused infringer's objective recklessness, and not affirmative duty of care, determines willful infringement). The scope of the waiver only covers those grounds addressed in the opinion of counsel. *Autobytel*, 455 F. Supp. 2d at 575 (holding scope of waiver of attorney client privilege only extended to potential infringement of the patent-in-suit, as the opinion of counsel only addressed non-infringement).

Generally, disclosure of opinions of opinion counsel do not constitute waiver of attorney-client privilege as to communications between the client and trial counsel. *Seagate*, 497 F.3d at 1374. Courts, however, are free to exercise discretion and extend waiver to communications between the client and trial counsel in unique circumstances. *Id.* at 1374–75.

When an accused infringer discloses an opinion of counsel to rebut a willful infringement allegation, the infringer may waive attorney-work product privilege. *Seagate*, 497 F.3d at 1375–76. However, the scope of this waiver of attorney work-product privilege is not as broad as waiver of attorney-client privilege. *Echostar*, 448 F.3d at 1302. Disclosure of an opinion of counsel does not waive work-product never communicated to the client, as this work-product is not probative on whether the client knew or should have known its activities constituted an objectively high risk of infringement of a valid patent. *See id.*; *see also Seagate*, 497 F.3d at 1370–71.

However, reliance on an opinion of counsel waives the attorney work-product privilege as to two categories: "documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter"; and "documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." *Echostar*, 448 F.3d at 1302.

Similar to attorney-client privilege, disclosure of opinions of opinion counsel do not

5


generally waive trial counsel's work-product privilege. *Seagate*, 497 F.3d at 1376. Courts are free to exercise discretion and extend waiver trial counsel's work-product in unique circumstances. *Id.*

**Analysis**

Time Records

Baker Hughes produced a copy of Walkowski's time records but redacted two entries. The two entries do not relate to whether Baker Hughes's acted objectively reckless when it relied on Walkowski's opinion of counsel. Thus, ReedHycalog's Motion to Compel with regard to the time records is **DENIED**.

Email Correspondence

Baker Hughes produced email correspondence with certain portions redacted. Some of the redacted portions relate to whether Baker Hughes's acted with objectively reckless when it relied on Walkowski's opinion of counsel. Thus, ReedHycalog's Motion to Compel with regard to the emails is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court **ORDERS** Baker Hughes to produce in unredacted form the following portions: in the email from Joseph Walkowski that begins on Priv001630, the second and third paragraphs where the third paragraph ends on the second line on Priv001361; the third full paragraph on Priv001631 where the first sentence of the paragraph begins "There is no guaranteed"; and the same two portions on the email from Walkowski on page Priv001635.

Littlefield Deposition Exhibits – Interoffice Memorandum and Trex Cutter Patent Analysis

The redacted portions of these documents do not relate to whether Baker Hughes acted objectively reckless when it relied on Walkowski's opinion of counsel. Thus, ReedHycalog's Motion to Compel with regard to the Littlefiled Deposition Exhibits is **DENIED**.

E6 Document

The E6 document, which was communicated to Baker Hughes, relates to whether Baker

Hughes acted objectively reckless when it relied on Walkowski's opinion of counsel. Thus, the Court **GRANTS** ReedHycalog's Motion to Compel with regard to the E6 document and **ORDERS** Baker Hughes to produce the E6 document.

## DEFENDANTS' MOTION TO COMPEL

**Background**

Jeffrey Daly, ReedHycalog's patent agent, prosecuted Application No. 09/682,042 (the "'042 Application"), which issued as the '985 Patent. The application that matured into the '447 Patent is a continuation of the '042 Application. The application that matured into the '098 Patent is a continuation of a continuation of the '042 Application.

On November 11, 2006, Defendants' counsel questioned Daly about an Office Action response where Daily represented to the Patent & Trademark Office ("PTO") that the prior art did not disclose an aspect of the claimed invention. Daily testified he "was convinced by [one or more of the inventors]" that the Sumitomo Application did not disclose that aspect of the claimed invention, although though Sumitomo Application on its face discloses that aspect of the claimed invention. Defendants' counsel subsequently asked Daly "[w]hat did [the one or more inventors] tell you that convinced you [the Sumitomo Application did not disclose the aspect of the claimed invention]?" Daly responded "That [] really requires an analysis of this patent and that's beyond me. It's – it's one for [the one or more inventors]. So I really can't answer that question." Defendants' counsel subsequently asked "What did the inventors tell you that made you convinced that your remarks to the patent office were true when you made them?" ReedHycalog's counsel objected to Daly answering the question to the extent Daly's answer would disclose privileged communications.

Defendants seek to compel further testimony from Daly with regard to his communications regarding prior art and any documents that pertain to the same subject matter.

**Applicable Law**

Courts, for good cause, may order discovery on any matter relevant to the subject matter in the lawsuit. FED. R. OF CIV. P. 26(b)(1). Relevant matters include information inadmissable at trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The Court adheres to a policy of liberal discovery, but where a claim of privilege renders an item undiscoverable, the Court will allow a party to withhold that item. *See STMicroelectronics*, 308 F. Supp. 2d at 756.

As stated above, attorney-client privilege applies only if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Myers*, 212 F.R.D. at 326 (citing *Kelly*, 569 F.2d at 938).[3]

Generally, a party waives attorney-client privilege when it voluntarily discloses the privileged communications to a third-party. *Alldread*, 988 F.3d at 1434; *see also Genentech, Inc.*, 122 F.3d at 1415. Similarly, a party waives attorney-client privilege when it fails to assert the

---

[3] Commentators generally believe Federal Circuit law should apply to determine whether attorney-client privilege attaches to communications between a patent agent and a client. David Hricik, *Patent Agents: The Person You Are*, 20 GEO. J. LEGAL ETHICS 261, 283–84 (2007); James N. Willi, *Proposal for a Uniform Federal Common Law of Attorney-Client Communications with U.S. and Foreign Patent Attorneys*, 13 TEX. INTELL. PROP. L.J. 279, 291–92 (2005). Courts, however, have applied privilege law from the regional circuit to determine whether attorney-client privilege protects communications between a patent agent and a client. *E.g., Agfa Corp. v. Creo Prods., Inc.*, No. Civ.A. 00-10836-GAO, 2002 WL 1787534, at *2–3 (D. Mass. Aug. 1, 2002) (applying First Circuit privilege law and holding attorney-client privilege did not apply to communications between patent agents and client where patent agents were not acting under supervision of an attorney); *Mold Masters Ltd. v. Huskey Injection Molding Sys., Ltd.*, No. 01 C 1576, 2001 WL 1268587, at *2–4 (N.D. Ill. Nov. 15, 2001) (applying Seventh Circuit privilege law and holding attorney-client privilege attached to communications between patent agents and client).

privilege when privileged information is disclosed during a deposition attended by the client or the client's lawyer. *Nguyen v. Excel Corp.*, 197 F.3d 200, 205–07 (5th Cir. 1999). When a party waives attorney-client privilege, it waives all communications that pertain to the subject matter of the waived communication. *GFI, Inc.*, 265 F.3d at 1273; *see also Fort James*, 412 F.3d at 1349. The privilege claimant has the burden to prove attorney-client privilege applies. *Myers*, 212 F.R.D. at 326 (citing *Kelly*, 569 F.2d at 938).

**Analysis**

Application of Attorney-Client Privilege to Communications Between Patent Agent and Client

The parties agree attorney-client privilege shields the communications and did not argue otherwise in their briefs. Thus, the Court will not decide the issue of whether attorney-client privilege attaches to communications between an unsupervised patent agent and a client. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997).

Waiver

Daly referenced communications between himself and ReedHycalog's inventors made during prosecution of the '042 application that convinced him about the what the Sumitomo Application disclosed. ReedHycalog's counsel objected when Defense counsel inquired as to the communications between Daly and the inventors. As a result, Daly did not waive attorney-client privilege. *See Murata Mfg. Co. v. Bel Fuse, Inc.*, No. 03 C 2934, 2007 WL 781252, at *3 (N.D. Ill. Mar. 8, 2007) (holding patentee did not waive attorney-client privileged when he testified in deposition about the basic subject matter of attorney-client communications made during prosecution and stating "[t]here is a significant difference between indicating the fact or topic of a confidential [communication] with an attorney and revealing its content. The latter effects a waiver of the attorney-client privilege, while the former does not."). Thus, Defendants' Motion to Compel is **DENIED**.

## DEFENDANTS' MOTIONS FOR LEAVE

**Background**

Defendants seek to supplement their answers with an affirmative defense that limits ReedHycalog's remedies against each defendant. Specifically, Defendants claim they are parties to agreements entered into by Schlumberger Technology Corporation ("Schlumberger"), that the Patents-in-Suit are subject to those agreements, and that the agreements limit ReedHycalog's remedies against Defendants. Defendants filed their motions for leave on February 11, 2008 and February 13, 2008. The deadline to file amended pleadings is March 21, 2008. Trial is set for June 9, 2008.

In its supplemental answer, Haliburton alleges that on May 20, 1991, Haliburton and Schlumberger entered into an agreement (the "1991 Agreement"), that Schlumberger is the predecessor in interest to the patent rights ReedHycalog asserts against Haliburton, that the Patents-in-Suit are subject to the 1991 Agreement's remedies limitation, and that the 1991 Agreement limits ReedHycalog's recovery to a maximum of five percent of revenue and precludes ReedHycalog from seeking injunctive relief in the current case.

USS joins Haliburton's Motion for Leave to Amend but does not plead any facts to show the 1991 Agreement limits ReedHycalog's remedies against USS. USS, however, did not append its supplemental answer to its motion for leave. USS filed its motion for leave before the Amended Docket Control Order deadline.

Baker Hughes, in its supplemental answer, alleges that Schlumberger and Western Atlas International, Inc. ("Western Atlas") entered into an agreement on March 2, 1993 (the "1993 Agreement"), that Schlumberger is the predecessor-in-interest to the Patents-in-Suit, that Baker Hughes is the parent company of Western Atlas and acquired Western Atlas's rights under the 1993 Agreement, that the Patents-in-Suit are subject to the 1993 Agreement's remedies limitation, and

10

that the 1993 Agreement limits ReedHycalog's recovery to a maximum five percent cumulative royalty and precludes ReedHycalog from seeking injunctive relief in the current case.

**Applicable Law**

A court's decision to grant or deny leave to amend a party's answer involves a procedural question that raises no special issues that relate to patent law, and thus Fifth Circuit law applies. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1124 (Fed. Cir. 2004)(applying Eleventh Circuit law to determine whether district court abused its discretion when it denied a party leave to amend its complaint to add a patent); *Computer Acceleration Corp. v. Microsoft Corp.*, Civil Action No. 9:06-cv-140, 2007 WL 2315223, at *1 (E.D. Tex. Aug. 10, 2007) (Clark, J.) (applying Fifth Circuit law to determine whether a party had shown good cause to amend its answer to add an additional affirmative defense and counterclaim). Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleadings if the opposing party consents in writing or with the court's leave.

If a party seeks leave of court, leave shall be freely give when justice so requires. FED. R. CIV. P. 15(a)(2). A court may deny leave under Rule 15(a)(2) if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts have discretion to grant or deny leave. *Id.*

**Analysis**

ReedHycalog does not show that it will be unfairly prejudiced if Defendants are granted leave to amend their answers. The addition of the contractual limitation of remedies defenses do not effect discovery on any claim or defense in the case and minimally affect discovery and expert reports with regard to damages. Further, denial of leave will greatly prejudice Defendants, as the additional affirmative defense may greatly reduce Defendants' liability to ReedHycalog. Thus,

11

justice requires giving leave[4], and the Court **GRANTS** Haliburton's and USS's Motion for Leave and **GRANTS** Baker Hughes's Motion for Leave.

### REEDHYCALOG'S MOTION TO REQUIRE USS TO WITHDRAW CONFIDENTIALITY DESIGNATION

**Background**

ReedHycalog retained David Hall as one of its technical experts. USS produced a document under the Court's Protective Order and marked the document "Confidential." ReedHycalog seeks to show a portion of the USS document to Hall and requests the Court de-designate those portions. USS objects to disclosure of the document portions to Hall on the basis that Hall continues to be active in the field of manufacturing polycrystalline diamond compact materials and has previous and ongoing business relationships with ReedHycalog and others in the industry.

**Applicable Law**

Courts, for good cause, may order discovery on any matter relevant to the subject matter in the lawsuit. FED. R. OF CIV. P. 26(b)(1). Relevant matters include information inadmissable at trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Federal Rule of Civil Procedure 26(c) allows courts, for good cause, to enter a protective order to limit production of, in addition to who can view, trade secrets or other confidential research, development, or commercial information.

The Court entered an Agreed Protective Order (Docket No. 83) on January 25, 2007. The Protective Order defines confidential information as "all information . . . which a producing party, including any party to this action and any non-party producing information or material voluntarily or pursuant to a subpoena or a court order, considers to constitute or to contain trade secrets or other

---

[4] ReedHycalog also claims leave to amend would be futile. That issue is more properly addressed in a fully briefed motion to strike or a motion for summary judgment and this Order does effect ReedHycalog's right to file such motions.

confidential research, development, or commercial or other information, whether embodied in physical objects, documents, or the factual knowledge of persons . . . which has been so designated by the producing party." Agreed Protective Order, ¶ 1.

Under the Protective Order, technical advisers may view confidential information, but the producing party can object to disclosure of confidential information. *Id.* at ¶ 10–13. The producing party cannot not unreasonably withhold its consent to disclose confidential information to a technical adviser. *Id.* at ¶ 13. The party that objects bears the burden to establish that the objectionable individual should not have access to the producing party's confidential information. *Id.*

**Analysis**

The portions of the USS document ReedHycalog seeks to de-designate falls within the Protective Order's definition of confidential information, as USS considers the document to contain confidential research. However, USS has not shown withholding its consent to show the portions to Hall is reasonable.

The reasonableness inquiry ultimately requires balancing USS's commercial interest to keep the information away from Hall versus ReedHycalog's interest in Hall's access to the information. USS claims Hall is not an independent expert and should not have access to the document portions on that ground. *See Digital Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 492 (D. Colo. 1992). USS, however, attempted to hire Hall as a technical expert in this case, and USS's CEO considers Hall to be honest and not biased against USS in the current case. To the extent Hall is active in the PDC industry, given the parties in this lawsuit and the limited amount of non-party experts in the field, disclosure of USS confidential information to Hall will not harm USS any more than any other technical expert ReedHycalog could have retained.

Further, while the USS document portions are confidential, the commercial harm to USS if

Case 6:06-cv-00222-LED    Document 354    Filed 03/27/08    Page 14 of 14 PageID #: 13202

Hall has access to the document portions is minimal. Hall is not currently engaged in leached PDCs and does not sell any leached PDC drill bits. The USS document portions most likely will not give Hall any commercial advantage if and when he competes with USS and manufacturers or sells leached PDC products. The USS document portions are probative on a major issue in the case and denying Hall access to the document portions would prejudice ReedHycalog. Thus, ReedHycalog may show the USS document portions to Hall, but the Court **DENIES** ReedHycalog's Motion to Require USS to Withdraw Confidentiality Designation, and the Protective Order applies.

## CONCLUSION

For the abovementioned reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** ReedHycalog's Motion to Compel (Docket No. 289), **DENIES** Defendants' Motion to Compel (Docket No. 290), **GRANTS** Haliburton and USS's Motion for Leave to File Supplemental Answer (Docket No. 301), **GRANTS** Baker Hughes's Motion for Leave to File Supplemental Answer (Docket No. 304), and **DENIES** ReedHycalog's Motion to Require USS to Withdraw Confidentiality Designation (Docket No. 308).

The Court **ORDERS** Baker Hughes to produce in unredacted form the following portions: in the email from Joseph Walkowski that begins on Priv001630, the second and third paragraphs where the third paragraph ends on the second line on Priv001361; the third full paragraph on Priv001631 where the first sentence of the paragraph begins "There is no guaranteed"; and the same two portions on the email from Walkowski on page Priv001635. The Court further **ORDERS** Baker Hughes to produce the E6 document.

**So ORDERED and SIGNED this 27th day of March, 2008.**



_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**